and we'll proceed with Streich v. Saul 21159. Ms. Kubitschek. Good morning your honors and may it please the court. My name is Carolyn Kubitschek. I represent the appellant Jacqueline Streich. Ms. Streich's case has become a lot more uncomplicated recently because of this Supreme Court's decision last week in Carl Carvey Saul. This court cannot affirm the decision of the district court. As the commissioner conceded in the 28-J letter that was filed yesterday, the sole remaining issue in this appeal is the remedy. Whether to reverse and award benefits to Ms. Streich or to remand the case for another hearing nine years after Ms. Streich became disabled. Ms. Streich asks that the matter be reversed, that this court order payment of benefits to her and that this court hold that the opinion of a non-treating, non-examining physician with a medical specialty that differs widely from the claimant's injuries can never constitute evidence to outweigh the opinion of the treating physician. Can I ask you a question though about Dr. Waits? Because Dr. Waits didn't say that she was she's been disabled for nine years, right? He didn't say when she became disabled, did he? Dr. Waits was not asked the question when she became disabled and and he did not answer the question. However, your honor, according to the Social Security Administration's own procedures and that's ruling 12-2P, I believe, when an individual becomes disabled as a result of a traumatic incident such as an injury as Ms. Streich did, the date of the onset of the disability is normally the date of the injury. Why wouldn't a remand help though to try to clarify some of these things? It was also the fact that Dr. Waits just checked the boxes. There wasn't a lot of discussion about any type of clinical findings. The ALJ noted that he said that your client could never operate foot controls and there was evidence that she could drive. So there are items with respect to Dr. Waits's conclusions that could benefit some for some clarification, right? Well, your honor, the the evidence is all in front of this court. There is no additional medical evidence that could be. No, but there is some conflicting evidence that I'm telling you that, you know, an ALJ on remand could explore. Dr. Waits said that your client could climb steps at a reasonable pace, prepare simple meals, perform activities such as shopping and care and personal hygiene. Dr. Ellis did a consultative examination that suggested that the limitations were not, you know, as severe as some other records. So it's not as if everything is aligned on one side. Well, your honor, if I could address Dr. Ellis first. Dr. Ellis was a psychiatrist and he offered an opinion on Ms. Strike's psychiatric problems and Ms. Strike is not claiming disability based upon her psychiatric problems. Let me ask you to focus on Dr. Darling. Dr. Waits last examined your client in February or March of 2016. In May of 2017, Dr. Darling is reporting a 50 percent improvement as a result of the treatment that she's been providing. So it does seem that Dr. Waits's checkbox analysis is well before Dr. Darling is engaging in, right? Well, your honor, Dr. Waits and Dr. Darling work together in the same medical practice and they consult with each other. Oh wait, but August 2016 is when the checkbox is done, right? Correct. That's correct. And then Dr. Waits followed up that evaluation in 2018 with a letter after the ALJ rule. After saying, judge, you misunderstood me. And if I can turn to the letter, Dr. Waits said that his evaluation had been based on all of the medical information he had at his testing and his functional capacity testing. And of course, his colleague, two of his colleagues actually treated Ms. Strike, Dr. Darling and one other physician at that time. You're saying he gets credit for their analysis as a treating physician for their vision? Yes, for sure. They all work together in the same practice. And this court said in the Schall case that when physicians work together as part of a group practice, they are considered treating physicians. And we do expect, especially when they're board certified, that they will talk to each other. I'm not quite sure that that's what Schall says. I mean, to the extent there's confusion about the number of times a treating physician actually examined and treated the claimant. The court basically credited the physician with those appointments, but I'm not sure it's quite as strong. The other case you said is Benton versus Barnhart, which is a Ninth Circuit case. But that's a situation where the doctor, the treating physician supervised the other treatment providers. There's no indication here. Is there that Dr. Waits supervised Darling or Darling? They're not supervised. No, Your Honor. But as these are all specialists, they are all recognized in their field. And it's expected that they will talk to each other and that they are familiar with each other's treatment. Certainly, Dr. Waits was reading all of his colleagues' treatment notes, and they were all reading the medical records and the test results that were performed on the strike. None of these doctors were operating in a vacuum. That's the advantage of having a group practice. Where you have medical specialists with slightly different medical specialties, they can all treat the same patient. And it benefits the patient, ultimately, that these different doctors with the same medical practice will consult and they will come up with the best diagnosis and best possible treatment plan for the patient. That's why doctors get into group practices. And that's why a patient will choose a doctor who is in a group, such as the group practice of Dr. Waits and Dr. Darling and Dr. Dolly. Oh, go ahead. Yes, Your Honor. When an adult... I thought one of my colleagues was going to ask a question. I've got a question. I've got two questions. Let's say that this goes back ultimately to the ALJ. Can you then supplement the record? That is, can you address some of the concerns that have been expressed? Yes. At a new hearing, the claimant can provide whatever information the claimant feels is important to the case. So, Ms. Streich will have the opportunity to submit additional medical evidence if she decides that that's... And the second question I have relates to the decretal language. Assuming that we don't just simply reverse and award benefits, but we, consistent with CAR, send it back to the ALJ, are we not vacating the district court's decision and then instructing the district court to send it back to the ALJ? Is that... That would be correct, Your Honor. But no matter what this court determines, the court will instruct the district court either to send the case for a new hearing or to award benefits to Ms. Streich. And the court can certainly... How would, under those circumstances, the district court award benefits? The district court would then... I'm sorry. The district court would have to order the commissioner to award benefits. Well, take me through that because how would that happen? Well, under Section 405G of Title 42, a court has the power to reverse the decision of the Social Security Commissioner with or without awarding benefits so that the court then has the option of telling the commissioner you need to award benefits, as this court has done. Part of the problem with that maybe is that the district court got to the merits and rejected the request for an award of benefits. So I'm not sure that I understand how it would, in this case, because of this procedural issue involving the constitutional challenge, really be in a position to award or instruct the commissioner to award benefits. Well, Your Honor, the court has... This court has done just that in many prior cases, where the district court determined that the individual was not disabled. In our brief N-28J letter, we pointed out the Stacey decision from 2019. There was also a decision in the case of Flynn in 2018, Green-Younger, and a number of cases where the district court, having considered the merits of a case and decided that the individual was not disabled or that the Social Security Administration was right in denying benefits, this court, the Second Circuit, has reversed and has issued a decision awarding benefits. The court could certainly say that it's clear that Ms. Streich was disabled on the date that Dr. Weitz issued his opinion. We are awarding benefits at least as of August 2016. My questions were premised on the assumption that we remand, but okay, I understand what you're saying. So we'll hear from Ms. Zoltan, the government commissioner. Good morning, Your Honors. My name is Ariella Zoltan, and I'm appearing on behalf of Andrew Zoltan, Commissioner of Social Security. Appellant just argued that a remand for calculation of benefits is appropriate because the ALJ did not defer to the opinion of her treating neurosurgeon, Dr. Alan Weitz. However, by challenging the ALJ's weighing and consideration of the medical opinion evidence, Appellant is attempting to take two bites at the same apple. Because both parties now agree that remand to a new ALJ is warranted, it seems counterintuitive for Appellant to also probe the merits of the ALJ's 2017 decision. Nevertheless, to the extent that Appellant argues that she's entitled to a direct award of benefits, Appellant has failed to show that the record provides persuasive proof of disability. I'm not sure that it's counterintuitive. This is maybe part of the reason why we're proceeding with argue on the merits that she's entitled to the benefits and we should reverse. I don't know that that conflicts with the Appointments Clause stance that she's also taken. Well, our position is that it seems counterintuitive to probe the ALJ's decision from 2017 when we've all agreed that the case has to go back for a new decision. If Appellant wants to discuss whether she's entitled to a remand for a calculation of benefits, we're looking at whether the record provides persuasive proof of disability, such that remand for further proceedings would serve no purpose. And here the Commissioner's position is that the record does not provide such persuasive proof of disability because there is so much conflicting evidence in the record as we just discussed. As we noted, there are hundreds of pages of treatment notes from both Dr. Waits and from his colleagues, as well as from other pain management specialists in the record. These treatment notes, they show some restricted range of motion and tenderness and strikes back, but they also show that she generally walked with a normal gait. She stood with an erect posture. She appeared comfortable at medical appointments. The treatment notes show that she demonstrated intact sensation, mostly full muscle strength, mostly negative straight leg raising tests. So when you have such conflicting evidence in the record, and we didn't delve into it, but there are also two opinions from two state agency medical consultants, Dr. Joyce Fong-Breton and Dr. Virginia Rittner, and they reviewed the evidence in the record, including all of the treatment notes that we just discussed. And they concluded based on the treatment notes, the radiological studies, appellant's own statements about her activities, that appellant was able to perform light work with additional postural limitations. So given that there is so much conflicting evidence in the record, we believe that this case has to go back for further administrative proceedings, because it's only appropriate for the ALJ to resolve these conflicts in the evidence. So, can I ask you a question? I saw in your 28-J letter, you said we should send it back to a different ALJ. I was just curious, how does that work? Is that automatic? In other words, if we didn't put in that language in an order, would it potentially, assuming obviously the ALJ was now properly appointed, would it go back to the same ALJ? How does that work as a matter of a new ALJ for a new decision? I'm saying if we didn't order that, could it potentially, without an order from the court, does it go back to the same ALJ, or how does that work? Given the Carr situation, given that we are remanding this case in accordance with Carr, this would go to a new ALJ. That's an agency policy, that's what it is? The agency is still formulating its policy since the Carr decision. However, in this particular case, given the decision in Carr, the case would go back to a new ALJ. Is there any issue that crossed my mind that if an ALJ is not properly appointed, is there any issue that the hearing itself is like a nullity, that there has to be a hearing before a properly appointed ALJ, and that we shouldn't even consider ordering benefits at this point because a properly appointed ALJ should make the credibility determination to ask additional questions, supplement the record, or does that not come up in any of these cases? So our position here is that this case should go back to a new ALJ, and that it should be an ALJ who is, as you mentioned, making the credibility determination, resolving the conflicts in the evidence, considering Dr. Waits' opinion in conjunction with Dr. Fung-Breton's opinion and Dr. Rittner's opinion, and really resolving all of these conflicts. No, I think the question, maybe Judge Bianco wants to clarify, but I took him to be asking, I mean, the standard you cited, the persuasive evidence of disability, does that even not apply when it is a Carr situation? Stacy didn't involve a problem with the appointment of the ALJ, and so if that's the problem, do we not even get to use that standard? Well, that standard, that is from the Parker v. Harris case, and I agree that was not in a situation involving Carr. That, the language there was looking at the record. So here if appellant wants to argue that the record contains such persuasive evidence of disability, however, we feel that's a very, very high standard, and because there is conflicting evidence in this record, it still needs to go back to an ALJ for further proceedings. Maybe I'll ask it a slightly different way, because if the ALJ had awarded benefits, and it turned out that the ALJ was not properly appointed pursuant to the appointments clause, is that, just to follow up on Judge Bianco's question, is that a nullity, or is that something that could stand where Ms. Kubitschek's client, Ms. Streich, is actually entitled to benefits, even though the ALJ was not properly appointed? Well, we would feel that that would still go back for a de novo hearing and a de novo decision. So even if the evidence is all on one side, there's no conflicting evidence, it's the government's position it has to go back no matter what, under the Carr situation? That is our position. Wow, okay, okay. And what, in your view, should the decreto language be then? So we, we're vacating it and sending it back to the district court. I mean, your letter to send it back to the ALJ, I don't know that we've got the power to do that. Are we not, and do we need to say that it needs to go back to a different ALJ? The agency plans on sending it back to a different ALJ in this case regardless. Okay, but we are vacating the district court's decision. Right, and remanding it back to the district courts, remand that. And just instructing it to remand back. For further administrative proceedings. Although, so your, your friend on the other side says we remand back really to let the district court determine everything in light of Carr. And so if it wants to change its mind, presumably, and award benefits, it could do that. That's the argument on the other side as I understood it. Why can't the district court do that? For the reasons you alluded to earlier. Correct, because of the conflicting evidence in the record, it's appropriate for the ALJ to decide whether this claimant is disabled. I see. Okay. Well, is there anything further, Ms. Hulton? I would just note that time and time again, this court has recognized that it is the ALJ who is tasked with weighing the evidence in the context of the larger administrative record and deciding whether the claimant is disabled. And so while appellant may prefer that this court rely exclusively on Dr. Waits' highly restrictive opinion, it's only appropriate for a properly appointed ALJ to first weigh the opinion in the conjunction with the other evidence in the record. And as such, we feel that a remand for further proceedings is the appropriate outcome in this case. Do you have any support for this proposition that the hearing is entirely a nullity? In other words, for the plaintiff or the person requesting benefits? We're basing this on the Carr decision. Yeah. I mean, wait a minute. I mean, but I assume that the commissioner is not saying that all the times we've granted benefits over the last however many years, we've got to go back and do those over because of the Carr decision. You're not saying that? No. So it's not a retroactivity issue, but going forward, what do we do when you're saying anything that's pending has got to go back no matter what the result was? Well, I'm saying because there is conflicting evidence in this record, this has to go back to the agency because this is not the sort of case that contains such persuasive proof of disability. That a remand for an award of benefits would be appropriate. This is the type of case where we have conflicting evidence and as a result, it should be heard by a new ALJ. This is a case-by-case determination. Got it. Thank you very much, Ms. Kubitschek. I think that the commissioner has effectively conceded that in some appeals, the court can, has the power to reverse and award benefits. And here, the commissioner keeps talking about conflicting medical evidence, but the only conflict is the opinions of non-examining, non-treating pediatricians that Ms. Stripe's back problems are not sufficient to render her disabled. And if those opinions are taken out of the mix, which they should be because... It's not just opinions, it's observations too. I mean, is the ALJ not allowed to consider facts? So if the treating physician said, this person can't get out of bed, and then there's evidence that the person was out of bed and was at shop right. That's something that you couldn't consider? You'd have to follow the treating physician's opinion? Of course the ALJ can consider facts, but in this particular case, if the court is talking about the question of her driving, Ms. Strike can drive. Dr. Waits said she can drive, but she cannot do the repetitive motion that is involved in operating foot controls. The Social Security Administration says, ah, this is a conflict, but to Dr. Waits, it was no conflict. And to people who think about operating foot controls, it's not a conflict. So if you take the opinions of the pediatricians out of the mix, then the only opinion that is of the treating physician, Dr. Waits, fortified by those of the colleagues he works with. And if there is only a treating physician opinion, this court has been very clear that the ALJ is not permitted to substitute his own medical opinion for that of a treating physician. So that if the only opinion existing is that of Dr. Waits, then the court must reverse and award benefits. And we're asking that the court take one step further and say the opinion of these two pediatricians who never saw or examined Ms. Strike and whose specialty is so far away from that of her illness, her degenerative disc disease, those cannot constitute evidence that outweighs the treating physician's opinion. And it's based on years of treatment and examination. And of course, in this case, the treating physician cut open her back and saw what was wrong with Ms. Strike and tried to fix it and was not successful. In such a case, there is no longer any issue to be resolved and the case should be reversed and benefits awarded. Thank you very much. We'll and I'll ask the clerk to adjourn court. Court sends adjourn.